HENRY J. BENJAMIN & others *vs.* BOARD OF APPEALS OF SWANSEA & another.

Bristol.     November 5, 1958. — January 7, 1959.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & WHITTEMORE, JJ.

*Zoning.*

The facts in a suit in equity respecting premises located in a district of a town essentially residential in character and zoned as such did not warrant a conclusion that a zoning variance permitting establishment of a restaurant on the premises through conversion thereto of a building constructed and used for the manufacture and sale of perfume and for dwelling purposes could be granted "without substantial detriment to the public good and without nullifying or substantially derogating

from the intent or purpose" of the zoning by-law as is required by G. L. c. 40A, § 15, and did not justify the granting of such a variance, even though there were some preëxisting nonconforming uses of a commercial nature in the district and widening of a highway and construction of a new bridge to accommodate increased traffic might lessen the desirability of the district for residential purposes.

BILL IN EQUITY, filed in the Superior Court on October 28, 1957.

The suit was heard by *Forte, J.*

*John F. O'Donoghue,* for the plaintiffs.

*Milton A. Westgate,* Town Counsel, (*Harold K. Hudner* with him,) for the defendants.

SPALDING, J. This is a bill in equity under G. L. c. 40A, § 21, inserted by St. 1954, c. 368, § 2, by way of appeal from a decision of the board of appeals granting a variance to Shirley R. Angus to establish a restaurant on her property. The bill is brought by the owners of property in the neighborhood affected by the proposed variance. Shirley R. Angus was allowed to intervene as a party defendant. The judge made findings of material facts. A decree was entered that the decision of the board of appeals granting the variance, subject to certain limitations, be "confirmed" and that the requested variance be "granted" subject to these limitations.[1] The plaintiffs appealed. The evidence is reported.

We summarize the facts as follows: Shirley R. Angus (the applicant for the variance in question) and her husband purchased on May 22, 1950, approximately fourteen acres of land situated on the northwesterly corner of Wilbur Avenue (sometimes referred to herein as Route 103) and Cedar Avenue in the town of Swansea. Shortly thereafter Mrs. Angus and her husband constructed on the northerly portion of this property a combination dog kennel and residence where they raised dogs for sale. About the same time (1950) Mrs. Angus built on another part of this lot the building for which she now seeks a variance. This building is constructed

---

[1] The form of this decree is not correct for the reasons set forth in *Lambert* v. *Board of Appeals of Lowell,* 295 Mass. 224, 228. The decree should have followed, mutatis mutandis, the language of the decree ordered in that case.

in the form of a T. The front or horizontal portion of the T was designed as a residence and was used as such by Mrs. Angus and her husband. The vertical portion of the T, which represents the greater part of the building, was designed for the manufacture of perfume and was used as such down to sometime in 1957, when that use was discontinued because of the death of Mr. Angus. This building was constructed on a concrete slab and has ceilings ten to eleven feet high. The commercial part of the building has windows located high in the wall, near the ceiling. In this part there are rooms for mixing, packaging, storing and selling perfume. The building is attractively designed so that viewed from the front it appears to be a substantial and costly residence. The original cost of this building was $60,000. To "reconstruct and rearrange" it for residential purposes would be "impractical and unreasonable because of the nature of the construction" and the cost of doing so would be about $35,000.

At about the time when Mrs. Angus and her husband constructed the buildings mentioned above the Swansea water district constructed a building on the southerly side of Wilbur Avenue (directly opposite the Angus property) which is used for an office, shop, garage and store yard.

During the year 1950 two of the plaintiffs, Eaton and Thompson, built houses two hundred and three hundred feet, respectively, from the locus for which the variance is sought. The other plaintiffs live in the neighborhood, but farther away. With the exception of the Swansea water district office and yard mentioned above, the only other commercial uses in the vicinity of the locus were a hairdressing establishment and a fish and quahaug market, the latter being one thousand feet from the locus. The remainder of the area surrounding the locus for at least a mile was devoted to residential purposes.

In the fall of 1953 the town of Swansea adopted a zoning by-law, under which a major portion of the town, including the locus, was placed in a so called rural and residential district. A few commercial uses of a minor nature are per-

mitted in such a district but these do not include a restaurant.

In September, 1957, Mrs. Angus applied to the board of appeals for a variance so that the combination dwelling and perfume shop could be converted into and used as a restaurant. The board of appeals, after hearing, granted the variance, subject however to certain conditions. These conditions had to do with the layout and appearance of the premises, the sale of intoxicating liquor (which was contemplated), and the portion of the property (about one acre) to which the variance would be applicable.

At the time the variance was applied for, the Commonwealth was widening the road (Route 103) in front of the locus and was constructing a new bridge across Cole's River, a mile distant, in order to facilitate the movement of traffic along this route.

After finding the foregoing facts, the judge found as follows: "[T]he premises in question were constructed for use as a place for the manufacture of perfume and . . . cannot be reasonably converted to the use of a residence required under the zoning by-law." These premises and nonresidential structures to the north and south of the locus were built before the passage of the by-law. The manufacture of perfume on the locus was no longer feasible because of the death of Mrs. Angus's husband. And there was the added circumstance that the construction of the new bridge and widening of Route 103 tended to make the locus less desirable for residential purposes.

The judge then concluded that to require the locus to be used as a residence would involve substantial hardship to Mrs. Angus especially in view of the type of structure involved, the cost of remodeling it, and the fact that the immediate area is nonresidential and was such prior to the adoption of the zoning by-law. The judge further concluded that the granting of the variance could be made without substantial detriment to the public good and without substantially derogating from the intent or purpose of the by-law. This conclusion was reinforced by (1) the substantial

distance of neighboring property from the locus, (2) the nature of the area prior to the adoption of the by-law, and (3) the conditions which would be imposed on the use of the locus for restaurant purposes.  He also concluded that the circumstances which called for the granting of a variance were limited to the locus and did not affect generally the entire district.

The guiding principles of law with respect to the granting or denial of variances have often been stated and need not be set forth at length.  It has been said many times that the power to vary the application of a zoning ordinance must be "sparingly exercised and only in rare instances and under exceptional circumstances peculiar in their nature, and with due regard to the main purpose of a zoning ordinance to preserve the property rights of others." *Hammond* v. *Board of Appeal of Springfield*, 257 Mass. 446, 448. *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence*, 324 Mass. 433, 439, and cases cited. *Blackman* v. *Board of Appeals of Barnstable*, 334 Mass. 446, 450.

We think that the facts here do not justify the granting of a variance.  The district was primarily residential and was such for about a mile from the locus.  There appears to have been little or no change in the character of the district since the zoning by-law was adopted.  To be sure, there were some nonconforming uses which were of a commercial nature, and that fact seems to have been an important factor in the judge's decision.  Compare *Tanzilli* v. *Casassa*, 324 Mass. 113.  But that is generally the situation when a zoning by-law or ordinance is adopted; it will seldom happen, except in newly developed areas, that there will not be some existing nonconforming properties.  "The preservation of property of others in the neighborhood is a matter of material consequence and so is the weakening of any safeguard designed and established to protect the public interest.  A zoning ordinance is intended to apply uniformly to all property located in a particular district, except in the case of an existing nonconforming use, and the properties of all the owners in that district have been subjected to the same re-

strictions for the common benefit of all." *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence*, 324 Mass. 433, 438–439.

Nor is the fact that, due to the widening of Route 103 and the building of the new bridge across Cole's River, there will be increased traffic on that road sufficient to justify the granting of the variance. The district still remains essentially residential, although some may consider it less desirable for that purpose than before. We also have in mind that, at the time the zoning by-law went into effect, there was already a nonconforming use (the perfume shop) on the locus. But the proposed variance seeks to subject the locus to a materially different use. A restaurant, which presumably would be open day and night seven days a week and where liquor would be sold, is a use quite different from the use formerly existing. See *Donovan Drug Corp.* v. *Board of Appeals of Hingham*, 336 Mass. 1, 4–5.

We are of opinion that the subsidiary facts found by the judge and the evidence do not justify his conclusion that the proposed variance can be granted "without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose" of the by-law. G. L. c. 40A, § 15. The case at bar falls within the authority of such cases as *Prusik* v. *Board of Appeal of Boston*, 262 Mass. 451, *Phillips* v. *Board of Appeals of Springfield*, 286 Mass. 469, *Real Properties, Inc.* v. *Board of Appeal of Boston*, 319 Mass. 180, *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence*, 324 Mass. 433, *Blackman* v. *Board of Appeals of Barnstable*, 334 Mass. 446, and *Atherton* v. *Board of Appeals of Bourne*, 334 Mass. 451, rather than *Marinelli* v. *Board of Appeal of Boston*, 275 Mass. 169, *Amero* v. *Board of Appeal of Gloucester*, 283 Mass. 45, *Tanzilli* v. *Casassa*, 324 Mass. 113, *Rodenstein* v. *Board of Appeal of Boston*, 337 Mass. 333, and *Kairis* v. *Board of Appeal of Cambridge*, 337 Mass. 528, on which the defendants rely.

In view of this conclusion we do not reach the question of hardship. *Atherton* v. *Board of Appeals of Bourne*, 334 Mass. 451, 454.

It follows that the final decree must be reversed and a decree is to be entered that the decision of the board of appeals of the town of Swansea was in excess of its authority and is annulled; and that the clerk of court within thirty days after the entry of the decree send an attested copy thereof to the board and to the inspector of buildings of the town.

*So ordered.*