FRANCESCO DiRICO & others *vs.* BOARD OF APPEALS OF QUINCY & another.

Norfolk.  December 9, 1960. — January 5, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Zoning.*

A decision of the zoning board of appeals of a city granting a variance to convert an unused and dilapidated factory building, located in the midst of an attractive residential area, into a professional office build-

---

ing with a garage and parking space was beyond the authority of the board and must be annulled since the effect of the proposed professional building on the neighborhood would be such as to preclude satisfying the requirement of G. L. c. 40A, § 15, for the granting of a variance that it be "without substantial detriment to the public good and without . . . substantially derogating from the intent or purpose of" the city's zoning ordinance.

BILL IN EQUITY, filed in the Superior Court on June 17, 1959.

The suit was heard by *DeSaulnier, J.*

*Harry Pavan,* for the plaintiffs, submitted a brief.

*Paul A. M. Hunt,* for Kurtzman.

KIRK, J. This is a bill in equity under G. L. c. 40A, § 21, as amended, by way of an appeal from a decision of the board of appeals of the city of Quincy granting a variance to Benjamin Kurtzman to remodel a building owned by him so that it could be used as a professional office building. The bill is brought by several owners of residential property in the neighborhood which would be affected by the proposed variance. Kurtzman was permitted to intervene. The judge made findings of material facts and entered a decree to the effect that the board did not exceed its authority in granting the variance. The plaintiffs appealed. The evidence is reported.

We summarize the facts as follows: The locus was purchased by Kurtzman in 1938. It is situated at 435 Adams Street at the corner of Brae Road. The building is a single story structure of concrete blocks and brick, with a monitor type (or factory type) roof. At one time it had been used for automobile repair and for the storage of used cars. Later it was used as a tonic bottling factory. It was being thus used when the zoning ordinance of the city of Quincy became effective on July 1, 1943. It continued to be used for tonic bottling, as a nonconforming use, for some years. Since 1954 the building has been idle and has fallen into disrepair. It is conspicuously unsightly in contrast to the well kept residences in the immediate neighborhood. It has not yielded any revenue at least since 1956. Foreclosure proceedings are pending.

DiRico v. Board of Appeals of Quincy.

The zoning ordinance of the city of Quincy establishes a residence "A" district and a residence "B" district. The "A" district is restricted to single family residences. A professional office is permitted in the "A" district provided the office is a part of the residence of the professional person. The "B" residence district is restricted to (a) residence "A" uses; (b) detached house for not more than two families; (c) detached house with fire retarding dividing wall for not more than four families.

The site is at the northwest corner of the intersection of Adams Street and Brae Road. It is within a "B" residence district. But the entire north boundary and one third of the west boundary of the land coincide with the boundary which separates the "A" district from the "B" district. Several of the appellants are residents of the "A" district. At least one of these is the owner of a dwelling adjoining the Kurtzman property. According to the testimony and the exhibits which we have before us the Kurtzman property would appear to be almost in the center of a very large area which is exclusively and attractively residential, with the exception of one nonconforming use a block away (see *Stark* v. *Board of Appeals of Quincy, ante,* 118). Most, if not all, of the residences in the "B" district are single family dwellings. The variance granted would permit the reconstruction of the factory building so that the outside or shell would retain its present outline (except that the monitor type roof would be replaced by an "angle roof") and the interior would be completely remodelled by the construction of thirty-six to forty rooms which would be subdivided into twelve or fourteen suites of professional offices, each with separate toilet facilities. A garage and a parking area for "as many cars as we can" will be provided. Approaches for these facilities will be on Brae Road which is twenty-four feet wide and is within a few feet of the residence "A" district. The cost of reconstruction will not be less than $65,000.

The judge was doubtless correct in concluding that the remodelled office building will be more attractive than the

present neglected factory building; and that the financial hardship to the owner will be relieved if the variance for business use is granted.

But we are of the opinion that the variance should not have been granted and that the decree in the Superior Court was erroneous.

The principles of law which govern the granting or the denial of variances have been repeatedly stated. The "power to vary the application of a zoning ordinance must be 'sparingly exercised and only in rare instances and under exceptional circumstances peculiar in their nature, and with due regard to the main purpose of a zoning ordinance to preserve the property rights of others.' " *Blackman* v. *Board of Appeals of Barnstable,* 334 Mass. 446, 450, and cases cited. Residence zones are designed to protect residences against business. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 431. The introduction of a new business enterprise to a residence area may enhance the commercial value of the property so used, but it is commonly conceded to have a marked depreciating effect upon the value of neighboring residential property for residential uses. "The preservation of property of others in the neighborhood is a matter of material consequence." *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence,* 324 Mass. 433, 438–439. *Cary* v. *Board of Appeals of Worcester,* 340 Mass. 748, 752–753.

The dilapidated structure could obviously be more easily converted to an office building than it could to a dwelling; but the land itself is especially well adapted for the construction of a residence or residences for which it is zoned.

We are of the opinion, based upon the evidence including photographs and plans, that a conclusion would not be justified that the proposed variance can be granted "without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of . . . [the zoning] ordinance." G. L. c. 40A, § 15. Failure to establish this prerequisite is fatal. *Spaulding* v. *Board of Appeals of Leicester,* 334 Mass. 688, 692.

In principle, we hold that this case is governed by the recent case of *Benjamin* v. *Board of Appeals of Swansea,* 338 Mass. 257, and by *Atherton* v. *Board of Appeals of Bourne,* 334 Mass. 451.

It follows that the final decree must be reversed and a decree is to be entered that the decision of the board of appeals of the city of Quincy was in excess of its authority and is annulled; and that the clerk of court within thirty days after the entry of the decree send an attested copy thereof to the board and to the inspector of buildings of said city.

<div align="right">

*So ordered.*