JOSEPH SHERMAN & others *vs.* BOARD OF APPEALS OF WORCESTER & another.

Worcester.   March 5, 1968. — April 3, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning,* Variance.

Findings with respect to a city owned parcel of several acres which was located at the edge of an area zoned and largely developed for single family residences, but which was lower than all the surrounding land and presented soil conditions and drainage problems making unlikely its development for residential purposes or for municipal purposes, showed that in the circumstances a variance allowing use of the parcel, after being acquired from the city, for a radio tower and a small building containing transmitting equipment was permissible.

BILL IN EQUITY filed in the Superior Court on April 10, 1967.

The suit was heard by *Quirico,* J.

*Harry Zarrow* (*Edward D. Simsarian* with him) for the plaintiffs.

*William T. Buckley* for WNEB, Inc. (*Henry P. Grady,* Assistant City Solicitor, for the Board of Appeals of Worcester, with him).

CUTTER, J.  The plaintiffs by this bill in equity (G. L. c. 40A, § 21, as amended) seek to set aside a decision of the Worcester board of appeals granting a variance to WNEB, Inc. (WNEB), with respect to 5.61 acres of unimproved land (the locus).  The locus is in an RS–7 Residential district.  WNEB proposes to use the land for a radio tower 200 feet high and for a small building (for transmitting equipment) occupying ground space of eighteen feet by twelve feet.  The zoning ordinance does not permit the maintenance of a radio transmitting station in such a district without a variance.

The board of appeals, after somewhat meager subsidiary findings, made the necessary findings to meet the statutory requirements.  G. L. c. 40A, § 15 (as amended through

Sherman *v.* Board of Appeals of Worcester.                ·

St. 1958, c. 381). The trial judge, however, made thorough, detailed findings and concluded that "literal enforcement of the [z]oning [o]rdinance . . . would involve substantial hardship to WNEB . . . owing to conditions especially affecting the . . . [locus] but not affecting generally the [RS]7 zoning district . . . and that the . . . variance may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the . . . [o]rdinance." The plaintiffs, owners of land near the locus, appealed from the final decree that the board did not exceed its authority in granting the variance. The judge adopted (with minor modifications) his findings as a report of material facts. The evidence is reported. The judge took a view of the area.

WNEB has operated a limited range radio station in downtown Worcester. Its transmission station has been taken by eminent domain for a redevelopment project. To meet Federal requirements, it must relocate its transmission tower in the northwesterly part of Worcester. The locus is the only parcel which meets WNEB's needs.

The locus is irregular in shape with sides about 247 feet, 693 feet, 555 feet, and 570 feet, respectively. The city acquired the parcel in 1943 and placed it under the Park Commission. WNEB in 1966 negotiated an option to purchase the locus for $12,000. Its new facilities there will cost a total of about $35,000. Sale of the land to WNEB has been authorized by special act. St. 1967, c. 319.

The zoning ordinance allows in an RS–7 district (primarily a single family residence area with minimum lots of 7,000 square feet) single family houses, on-campus dormitories, schools, colleges, churches, nonprofit recreational facilities, and public service buildings, including transformer substations,[1] fire and police stations, and pumping stations. By special permit, certain multiple residence conversions, clubs, and cemeteries also may be allowed.

The entire RS–7 district (at the edge of which the locus

[1] The proposed small equipment station presumably will not differ much in size or appearance from such a permitted substation.

lies),[2] consists of about 100 acres. Most of the area is fully developed, principally for single family dwellings. The locus lies at a lower elevation than all other land in the district and is the "ultimate drain point for all water" in the immediate area. There have never been buildings on the locus and it has been used by the city and others for dumping rubbish and waste material. Pictures in evidence show the area to be wholly undeveloped and in a state of considerable disorder. It is covered with nondescript weeds, trees, and growth and contains wet or damp spots where the water level is close to the surface. The soil for the top few feet is loamy sand which covers deep peat or silt. In 1959, the city had tests made to see whether it was feasible to build a high school in the area of which the locus is a part. It was discovered that because of soil conditions it would be expensive to do so. The Park Department has never developed the area for park or recreation use. To do so would present drainage problems and require expensive fill. Soil conditions make the locus unattractive to residential developers. A house, which elsewhere would cost $15,000, by the soil problems of the locus would have $6,000 to $8,000 added to the price. These conditions make it a hardship to any owner of the locus to have the zoning regulations applied to it. Such application of the ordinance would probably result in complete nonuse of the parcel. The moist conditions, however, are not harmful to AM radio transmission.

The proposed radio tower will be about 300 feet from the nearest existing residence. Although the tower will be visible from residences nearby, many such residences now require and have special, very high antennae to obtain good quality television reception. The proposed WNEB installation, near the middle of a 5.61 acre somewhat wooded lot, will "not derogate any more from the intent and purpose of the . . . [o]rdinance than does the . . . present veritable jungle of television" antennae connected with the

[2] The northeast side of the locus abuts on an RS-10 district (essentially a single family house area with 10,000 square foot minimum lots). The southeast side of the locus borders on an RG-5 district, where some multi-family residence use is permitted.

neighborhood buildings. To protect the appearance of the locus, the board imposed various landscaping requirements in granting the variance. The installation will not require presence of personnel except for a daily inspection. There will be no noise. The value of land and residences in the neighborhood will not be adversely affected. Cf. *Cary* v. *Board of Appeals of Worcester*, 340 Mass. 748, 751–753.

Each of the foregoing findings of the trial judge was abundantly justified by the evidence. The judge could fairly conclude (as he apparently did) that development of the area for park, conservation, or recreational use was not likely and was not sound as an economic matter (see *Chater* v. *Board of Appeals of Milton*, 348 Mass. 237, 245–246), particularly in view of other park and recreational facilities in the neighborhood. Upon conflicting evidence, the judge was justified (and certainly not plainly wrong) in deciding that WNEB's proposed use of the locus was proper and desirable and an appropriate method of relieving the hardship which would result from applying the ordinance to the locus. *Rodenstein* v. *Board of Appeal of Boston*, 337 Mass. 333, 335–337 (rock formation). *Dion* v. *Board of Appeals of Waltham*, 344 Mass. 547, 551–552 (peat deposits and dumping). Cf. *Stark* v. *Board of Appeals of Quincy*, 341 Mass. 118, 120–122; *Sullivan* v. *Board of Appeals of Belmont*, 346 Mass. 81, 84.

In the circumstances, a variance was permissible, despite the planning board's adverse report and their opinion that there was "a shortage of park land," and despite the opposition of neighbors and others on the ground that the locus should be preserved without change. Indeed, any other conclusion might have led to a situation similar to those considered in *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 449, *Gem Properties, Inc.* v. *Board of Appeals of Milton*, 341 Mass. 99, 105, and *Jenckes* v. *Building Commr. of Brookline*, 341 Mass. 162, 165–166. See *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 214; *Lapenas* v. *Zoning Bd. of Appeals of Brockton*, 352 Mass. 530, 533–534.

*Decree affirmed.*