FREDERICK W. ABBOTT & others *vs.* APPLETON NURSING HOME, INC. & another.[1]

Middlesex.    December 5, 1968. — January 15, 1969.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* Variance, Nursing home.  *Equity Pleading and Practice,* Bill, Zoning appeal.

The allegations in the bill in a certain suit in equity in the Superior Court under G. L. c. 40A, § 21, attacking the granting of a variance by a zoning board of appeals were adequate against a demurrer.  [219]

A zoning variance granted with respect to "an old fashioned house" used as a nursing home in a residential district in a city was in excess of the authority of the zoning board of appeals and must be annulled in the circumstances where it appeared, among other things, that the nursing home use of the house was a preëxisting nonconforming use, that the variance would allow substantial structural alterations designed to increase the bed capacity of the home more than fifty percent and resulting in a greater occupation of land by the building and a less residential appearance of the building, and that the occasion for the variance was certain changes in the facilities of the home ordered by the Department of Public Health which could not "be made economically except by enlarging the . . . structure in the manner contemplated" and would require the increase in bed capacity "as a practical matter of efficient and profitable management," and where conclusions were justified that at most there was merely hardship personal to the proprietor of the home and no hardship of the kind necessary for a variance under G. L. c. 40A, § 15 (3), and that the variance would derogate substantially from the intent and purpose of the zoning ordinance as to preëxisting nonconforming uses.  [220–222]

BILL IN EQUITY filed in the Superior Court on May 18, 1967.

The suit was heard on demurrer and on the merits by *Vallely,* J.

---

[1] The other defendant is the board of appeals of Medford.

*Donald W. Suchma* for the plaintiffs.

*David Berman* (*Nelson P. Lovins* with him) for Appleton Nursing Home, Inc.

*Mark E. Gallagher*, City Solicitor, for Board of Appeals of Medford, submitted a brief and was present but did not argue.

CUTTER, J.  This bill (see G. L. c. 40A, § 21, as amended) seeks to set aside a zoning variance granted by the Medford board of appeals to Appleton Nursing Home, Inc. (Appleton) for structural additions to its nursing home.  A demurrer by Appleton was overruled.  On the merits, the trial judge sustained the board's action.  He made a report of material facts.  The plaintiffs appealed from the final decree. Appleton appeals from the interlocutory decree overruling its demurrer.  The evidence is reported.  The facts are stated on the basis of the judge's findings, except as otherwise noted.

The plaintiffs live near Appleton's nursing home at 25 Hall Avenue, Medford.  The house has been used as a licensed nursing home since 1945.  Before 1965, the nursing home was a permitted use in the zoning district (SF-1, single family residence) and the structural changes now proposed could have been carried out without a variance. In 1965 Medford changed its zoning ordinance to remove nursing homes from the uses permitted in an SF-1 district.

The area is "an old fashioned residential section . . . close to . . . [Medford's] central business district."  Near by are "a three-family house, [the] Medford High School, a large medical clinic, and a funeral home."[2]  The Appleton building "is an old fashioned house."  The contemplated changes involve "filling the ells . . . in the northwest and southeast corners of the building, closing in the . . . open

---

[2] The evidence shows that there are other nursing homes in the same SF-1 district.  The three-family house (apparently an old single or two-family residence) is directly across the street from Appleton's lot on Woodland Avenue. The high school is diagonally across two streets from that lot.  The medical clinic and funeral home are not in the same block as Appleton's lot but are respectively about a block and a half and a block away on corners of main thoroughfares.

front porch and adding a story on it." There is a shortage of nursing homes in Medford.

In 1961 the State Department of Public Health, which licenses nursing homes, adopted new regulations. Appleton did not meet the department's new requirements because it "did not have sufficient bathrooms, janitorial [and utility] closets . . . and a day room." In 1964 Appleton was told that it would not be relicensed unless these deficiencies were cured.

The judge concluded, on somewhat meager testimony (and perhaps what he saw on a view), that the "changes required . . . cannot be made economically except by enlarging the present structure in the manner contemplated," and that the expense of the changes requires "as a practical matter of efficient and profitable management" the increase of Appleton's capacity from twenty-two to thirty-four beds. The judge concluded also that the changes would not damage adjacent property but would enhance the latter's value; that because of conditions affecting the Appleton parcel, but not affecting generally the zoning district, literal enforcement of the zoning ordinance "would involve substantial hardship, financial or otherwise to" Appleton; and that relief may be granted "without substantial detriment to the public good and without . . . substantially derogating from the intent" of the zoning ordinance.

1. Appleton's demurrer was properly overruled. The bill sufficiently alleged various respects in which the board of appeals, on the evidence before it, had acted in a manner which might reasonably be found to have exceeded its authority. It also alleged a proposed substantial increase in a nonconforming use of Appleton's land by means of proposed structural alterations of Appleton's building which reasonably might be found to be detrimental to the neighborhood and inconsistent with the purposes of the zoning ordinance.

2. The evidence shows no order to Appleton by the State Department of Public Health that Appleton must enlarge its bed capacity. Appleton was told that it must rearrange

and change certain of its facilities, apparently to maintain even a twenty-two bed nursing home. Possibly this would involve some structural changes but Appleton has not established that these need be as substantial as those in fact authorized by the variance.[3]

So far as appears, Appleton's parcel and building are subject to the same restrictions which affect other parcels and buildings in the neighborhood, except that Appleton and other pre-1965 nursing homes may carry on their nonconforming uses. A plan of the immediate area shows that Appleton's lot, although larger than some lots in the area, is not the largest. This plan also indicates that the area generally is one of substantial houses. Pictures of Appleton's building reveal that it, like two other neighboring dwellings, is a large frame residence type structure. Sketches or elevation plans of the building with its proposed alterations strongly suggest that it, if altered, will then look more like an institution and less like a dwelling than at present.

The evidence provides no basis for concluding that there is hardship, caused by the SF-1 zoning restrictions, which affects Appleton's lot, as distinguished from its present use, in a manner which is not applicable generally throughout the zoning district. Appleton has not established (see *Barnhart* v. *Board of Appeals of Scituate,* 343 Mass. 455, 457; *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 555–556) that its building, without substantial external change, cannot still be used for a twenty-two bed nursing home, even if the State requirements are put into effect. That Appleton will not be able to continue a nursing home economically, unless it has thirty-four beds instead of twenty-two beds, does not create a hardship of the type to justify a variance. Appleton merely seeks to have a larger and more advantageous nonconforming use. *Bruzzese* v.

---

[3] The evidence was that about 1,580 to 2,500 square feet of additional floor space would be provided under the plans (drawn to raise the capacity to thirty-four beds) for the proposed structural changes. There was also evidence that the additional space needed to carry out the department's minimum requirements would be much less, probably about 255 square feet. New construction, under the plans, would cover an additional 846 square feet of the Appleton land.

*Board of Appeals of Hingham,* 343 Mass. 421, 424. *McLaughlin* v. *Rockland Zoning Bd. of Appeals,* 351 Mass. 678, 683. Appleton also is not deprived, if it does not receive a variance, of its opportunity to use the property for any use permissible in an SF-1 zone.

We have given consideration to cases which have discussed, in connection with variances, the economic and practical feasibility of other or continued uses of land. See *Marinelli* v. *Board of Appeal of Boston,* 275 Mass. 169. 172–173; *Amero* v. *Board of Appeal of Gloucester,* 283 Mass. 45, 52; *Tanzilli* v. *Casassa,* 324 Mass. 113, 114, 117; *Rodenstein* v. *Board of Appeal of Boston,* 337 Mass. 333, 337; *Kairis* v. *Board of Appeal of Cambridge,* 337 Mass. 528, 530; *Lapenas* v. *Zoning Bd. of Appeals of Brockton,* 352 Mass. 530, 534. See also *Chilson* v. *Zoning Bd. of Appeal of Attleboro,* 344 Mass. 406, 410–414; *Sherman* v. *Board of Appeals of Worcester,* 354 Mass. 133, 136. Appleton's lot is not subject to special disadvantages or peculiarities affecting its availability for permitted uses. Much more than a moderate or trivial modification of a nonconforming use is sought by Appleton. The proposed variance would permit more than a fifty per cent increase in that use and extension of the portion of Appleton's lot covered by buildings. It would also result in a building significantly less residential in appearance.

Whatever hardship may exist is personal to Appleton and its use of the land (see *Russell* v. *Zoning Bd. of Appeals of Brookline,* 349 Mass. 532, 535) and is not a hardship "especially affecting . . . [Appleton's] parcel." See *Bouchard* v. *Ramos,* 346 Mass. 423, 426, and cases cited. To hold otherwise would treat the declining profit derived from a nonconforming use as in itself a hardship permitting a variance to enlarge and expand that use, even though the premises could continue to be used as in the past, probably less profitably, for the same or other purposes.

3. The variance is also improper because it derogates substantially from the intent and purpose of the revised Medford zoning ordinance, portions of which are set out

in the margin.[4]  In view of the limited definition of "Non-Conforming Structure" in § 3.41, § 11.2 has no effect upon the expansion of a non-conforming use but relates only to nonconformity of a physical structure and its alteration or expansion.  Other provisions of the ordinance [5] support this interpretation and, in our opinion, control § 11.2 with respect to use.

4. Because Appleton has not established the necessary element of hardship affecting its lot, it is unnecessary to

---

[4] Sections 11.1 and 11.2 (emphasis supplied) read: "11.1 INTENT. Within the districts established . . . there exist lots, structures, and uses of structures . . . or land which were lawful before this Ordinance was . . . amended, but which would be prohibited . . . under . . . this Ordinance . . . .  It is the intent of this Ordinance to allow non-conforming uses to continue until they are removed or abandoned, *but not encourage their survival.*  Such uses are declared by this Ordinance *to be incompatible with permitted uses . . . .*  It is the further intent . . . that *non-conforming structures, uses,* and other types of non-conformities *shall not be enlarged upon, expanded, or extended,* nor shall their existence be used as grounds for adding other structures or uses or other types of non-conformities prohibited elsewhere in the same district. 11.2 NON-CONFORMING STRUCTURES.  A non-conforming *structure* may be continued but shall not be altered, when the same would amount to reconstruction, extension or *structural change,* in any way which creates or increases any type of non-conformance with the provisions of this Ordinance, provided, however, that a *structure* devoted to a commercial or industrial use which exists on a lot at the time of the passage of this amendment, which conformed to this ordinance prior to the said amendment, *may be expanded* anytime if such expansion is completed by January 1, 1970, and conforms to the requirements of this ordinance as they were in effect immediately prior to the passage of this amendment or to the requirements in any subsequent amendment, and a special permit has been obtained where necessary from the City Council for the proposed expansion" subject to an exception not shown to be relevant.  The term "Non-Conforming Structure" is defined in § 3.41 as one "that does not conform to the dimensional, accessory building, sign, parking or loading regulations of this Ordinance, or which was not designed to conform to a use regulation prescribed by this Ordinance for the district in which it is located; but which was in existence at the time the regulation became effective and was permitted at the time the structure was built."

[5] Section 11.42 reads, in part: "11.42 *Non-Conforming Uses of Structures or of Structures and Land.*  Where, at the effective date of adoption or amendment of this Ordinance, *lawful use* of a structure or of a structure and land in combination exists that is no longer permissible under the terms of this Ordinance as enacted or amended, such *non-conforming use* may *be continued* subject to the following provisions: (a) Any existing structure devoted to a use not permitted by this Ordinance in the District in which it is located shall not be moved, enlarged, reconstructed, extended or structurally changed *except in changing the use of the structure to a use permitted in the District in which it is located.*  (b) No non-conforming use may be extended throughout any parts of a building, *nor extended to occupy any additional land* outside such building.  (c) Any non-conforming use of a structure, or structure and land, may be replaced only by a conforming use, except as specified in Section 5 of this Ordinance . . ." (emphasis supplied).

discuss other grounds of invalidity of the variance which have been argued.

5. Appleton also contends that, if the zoning provisions would cause it to close the nursing home "by forbidding it to make a good-faith effort to comply with" the State department's regulations, the ordinance would unconstitutionally deprive Appleton of its property without due process of law. The present record deals only with the propriety of the requested variance (cf. *Morin* v. *Board of Appeals of Leominster*, 352 Mass. 620, 624) and falls short of establishing that the zoning ordinance operates to deprive Appleton of all reasonably advantageous use of its property. Cf. *Barney & Carey Co.* v. *Milton*, 324 Mass. 440, 444–450; *Jenckes* v. *Building Commr. of Brookline*, 341 Mass. 162, 166.

6. The interlocutory decree overruling Appleton's demurrer is affirmed. The final decree is reversed. A new final decree is to be entered declaring that the decision of the board of appeals is annulled as being in excess of its authority.

*So ordered.*