JOSEPH J. HUNT *vs.* MILTON SAVINGS BANK & another[1] (and two companion cases).

Norfolk. February 21, 1974. — April 5, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

Zoning, Variance. *Equity Pleading and Practice,* Zoning appeal. *Certiorari. Moot Question.*

In a suit in equity under G. L. c. 40A, § 21, by way of appeal from a decision of a town's zoning board of appeals granting a variance for construction of a bank building and parking lot on a locus in a residential zoning district, a decree annulling the decision must be affirmed where the judge failed to find that the variance could be granted "without nullifying or substantially derogating from the intent or purpose of . . . [the zoning] by-law" within § 15(3), and

---

[1] The board of appeals of the town of Milton.

such a finding by this court was not warranted by evidence that the neighborhood of the locus was devoted exclusively to single residence and other uses permitted in the zoning district, that there were no commercial uses in the neighborhood, and that the locus could be divided into a limited number of house lots. [134-141]

A certiorari proceeding challenging the composition of a town's zoning board of appeals for the sole purpose of invalidating a particular decision of the board must be dismissed as moot where the decision was annulled in companion suits in equity under G. L. c. 40A, § 21. [141]

Two BILLS IN EQUITY filed in the Superior Court on August 28, 1972, and October 28, 1972.

PETITION for a writ of certiorari filed in the Superior Court on January 4, 1973.

The cases were heard by *Brogna, J.*

*John E. Rogerson* for Milton Savings Bank.

*Robert D. O'Leary,* Town Counsel, for the Board of Appeals of Milton.

*Paul A. M. Hunt* for Joseph J. Hunt.

*Thomas A. Brett* for Florence M. Murphy & others.

GRANT, J.   These are (1) separate bills in equity brought under G. L. c. 40A, § 21, by an abutter[2] and by others claiming to be aggrieved[3] to set aside a decision of the board of appeals of the town of Milton (board) granting a variance from the provisions of the zoning by-law of the town of Milton to the Milton Savings Bank (bank) for the construction of a bank building and an associated automobile parking lot on land (locus) owned by Hoover Motors, Inc. (Hoover), which is zoned for residential uses, and (2) a petition brought against the board by two of the plaintiffs in the equity cases[4] for a writ of certiorari to quash the decision of the board on the ground that the board was illegally constituted.   All three cases were heard together in the Superior Court,

---

[2] Joseph J. Hunt.

[3] Florence E. Murphy and others.

[4] Charles W. Sweeney and Joseph J. Hunt.

where the trial judge filed one set of findings (later adopted as a statutory report) applicable to the equity cases and another set of findings applicable to the certiorari case. The bank and the board have appealed from final decrees which annulled the decision of the board; the certiorari case is here on the petitioners' exception to an order for judgment that the petition be dismissed.

As the evidence in the equity cases is reported, all questions of law, fact and discretion in those cases are open for review by us, and we can and shall make certain findings in addition to those made by the trial judge. See *Sullivan* v. *Board of Appeals of Canton*, 345 Mass. 117, 119 (1962). However, we cannot disturb the findings made by him unless convinced that they are plainly wrong. *Broderick* v. *Board of Appeal of Boston*, 361 Mass. 472, 477, 478-479 (1972).

1. The locus, containing some 71,000 square feet of land, comprises the major portion of an approximately rectangular block which is bounded westerly and northwesterly by Squantum Street, easterly by Libby Road (a private way) and southerly by Adams Street, which runs in a general northwesterly direction from East Milton Square to Milton Lower Mills. Four contiguous house lots, with homes on them, appear as if carved out of the northwest corner of the block; the locus comprises the remainder of the block. The easterly portion of the locus is traversed from south to north by successive easements taken by the town of Milton (town) in 1931 and in which are located pipes which enclose Unquity Brook (or Gulliver's Creek), which runs through the locus in a northerly direction to the point where, on the opposite side of Squantum Street from the northerly boundary of the locus, the brook empties into the southerly tip of the Neponset River Reservation.[5]

---

[5] At the trial in the Superior Court there was persuasive evidence offered by the bank, which has an agreement to purchase the locus

When the zoning by-law was first adopted in 1922 the locus was placed in a Residence C District, in which, at the time of the application to the board and at the time of trial, no building could be erected or altered for any commercial purpose. The principal uses made of the premises following 1922 had been the sale, repair and storage of automobiles; such uses had been made under the nonconforming use provisions of the zoning by-law. In 1947, in proceedings brought in the Superior Court by the town against the then owner of the locus, a consent decree was entered to the effect that no nonconforming use any longer existed with respect to the northerlymost 9,584 square feet of the locus (on which the bank proposes to construct a portion of a parking lot), and the owner was permanently enjoined from using that portion of the locus for any purpose not permitted in a Residence C District. At the time of the hearing before the board and at the time of trial the locus was covered in large measure by a complex of garage and related buildings which the trial judge characterized as "obsolete and run-down in appearance." All use of the buildings was discontinued approximately two months before trial. We know from a stipulation of the parties which was filed with us pursuant to leave granted for that purpose (stipulation) that subsequent to the entry of the final decrees in the Superior Court all the buildings were demolished "by order of the [t]own, pursuant to General Laws c. 143, §§ 7, 9, because of their dangerous condition." Certain photographs attached to the stipulation tend to confirm the judge's characterization of the buildings.

---

from Hoover contingent (among other things) on securing the desired variance, that the obstacles to residential development of the locus which would be presented by the existence and location of the easement, as well as by difficulties in attempting to connect the easterly portion of the locus to a gravity sewer located in Libby Road, would effectively reduce from eight to six the number of conforming house lots into which the locus could be divided if it should have to be devoted to residential uses.

There is heavy automobile traffic on Squantum Street due to nearby ramps which provide access to and egress from the portion of the Southeast Expressway which skirts the Neponset River Reservation and runs in a general southeasterly direction from Boston through Milton and on to Quincy.[6]  Except for its physical presence and the traffic which it has generated, the expressway seems to have had no real impact on the general character of the neighborhood which surrounds the locus.  As disclosed by the evidence and by certain of the photographs attached to the stipulation the neighborhood is devoted exclusively to the single-family residential and other uses expressly permitted by the by-law.  On Adams Street, a short distance to the east of Libby Road, are a church, a rectory, and a parochial school attended by approximately 500 students.  There are no commercial uses in the neighborhood.  The nearest district zoned for business uses lies some 1,200 (or 1,500) feet distant (along Adams Street) in East Milton Square.  The nearest nonresidential or other nonpermitted use consists of a professional office building which lies easterly of another access ramp to the expressway, in the vicinity of East Milton Square.  The judge, who took a view, stated in his findings that the "entire area [surrounding the locus] is composed of well kept homes on tree lined streets." He also stated that he "could see no use of any of the surrounding area which would indicate that variances had been granted on other properties."

In our view the equity cases can, and should, be determined by a consideration of the single question whether the requested variance could be "granted . . . without nullifying or substantially derogating from the intent or purpose of . . . [the zoning] by-law" within the meaning of G. L. c. 40A, § 15 (3).  If it could not, that would be the end of the matter.  *Atherton* v. *Board of*

---

[6] The portion of the expressway which is nearest to the locus lies northeasterly thereof.

*Appeals of Bourne,* 334 Mass. 451, 454 (1956). *Planning Bd. of Springfield* v. *Board of Appeals of Springfield,* 355 Mass. 460, 462 (1969). The board's decision on this point contains a single naked finding which paraphrases the statutory language. The trial judge stated as follows: "I cannot rule that the [b]oard was warranted in finding that the variance may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of the zoning by-law." We need not decide whether this particular statement was intended as a ruling as to the sufficiency of the evidence at the public hearing held by the board,[7] as a ruling that the bank and the board had failed to sustain their burden of proving the proposition contended for by them (see *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 555-556 [1962]; *Sullivan* v. *Board of Appeals of Canton,* 345 Mass. 117, 119-120 [1962]), or as a simple statement that the evidence left the judge unconvinced of the truth of that proposition. The true significance of the statement lies in the fact that the judge did not make a finding, essential to the validity of the board's decision, that the variance sought could be granted without nullifying or substantially derogating from the intent or purpose of the by-law. As the evidence is reported, it falls to us to decide whether we can or should supply the missing finding. See *Sullivan* v. *Board of Appeals of Canton,* 345 Mass. 117, 119 (1962). A careful review of the cases decided under the provisions of G. L. c. 40A, § 15 (3), and under the cognate provisions of St. 1956, c. 665, § 9,[8] leads us to the conclusion that we cannot supply such a finding.

There seems to be no question that what the bank proposes would be aesthetically more attractive than what existed on the locus at the times of the public

---

[7] Which seems unlikely, as the court was not apprised of such evidence.

[8] And under their respective predecessors.

hearing and trial.   See *DiRico* v. *Board of Appeals of Quincy,* 341 Mass. 607, 609-610 (1961); *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 477-478 (1972).   Although there was no evidence that the proposed use would cause specific injury to any of the nearby or surrounding properties (compare *Sherman* v. *Board of Appeals of Worcester,* 354 Mass. 133, 135-136 [1968]; *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 477-478, 479 [1972]; contrast *Cary* v. *Board of Appeals of Worcester,* 340 Mass. 748, 752-753 [1960]), we cannot overlook the fact that "[t]he introduction of a new business enterprise to a residence area . . . is commonly conceded to have a marked depreciating effect upon the value of neighboring residential property for residential uses." *DiRico* v. *Board of Appeals of Quincy,* 341 Mass. 607, 610 (1961).

We cannot ignore the predominantly residential character of the neighborhood.   Compare *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 677-678 (1953); *Atherton* v. *Board of Appeals of Bourne,* 334 Mass. 451, 452, 454-455 (1956); *Benjamin* v. *Board of Appeals of Swansea,* 338 Mass. 257, 259-260, 261-262 (1959); *Stark* v. *Board of Appeals of Quincy,* 341 Mass. 118, 121 (1960); *DiRico* v. *Board of Appeals of Quincy,* 341 Mass. 607, 609 (1961); *McLaughlin* v. *Rockland Zoning Bd. of Appeals,* 351 Mass. 678, 683 (1967); *Abbott* v. *Appleton Nursing Home, Inc.* 355 Mass. 217, 220 (1969).   There does not appear to have been any change in the basic character of the neighborhood since the time of the adoption of the original zoning by-law. Compare *Everpure Ice Mfg. Co. Inc.* v. *Board of Appeals of Lawrence,* 324 Mass. 433, 438 (1949); *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953); *Benjamin* v. *Board of Appeals of Swansea,* 338 Mass. 257, 261-262 (1959); *Stark* v. *Board of Appeals of Quincy,* 341 Mass. 118, 120 (1960).   Contrast *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 549, 552 (1962).   No other commercial (or similar)

establishment is to be found in the neighborhood. See
*Atherton* v. *Board of Appeals of Bourne*, 334 Mass. 451,
454-455 (1956); *Benjamin* v. *Board of Appeals of Swan-
sea*, 338 Mass. 257, 259 (1959); *DiRico* v. *Board of
Appeals of Quincy*, 341 Mass. 607, 609 (1961); contrast
*Hammond* v. *Board of Appeal of the Bldg. Dept. of
Springfield*, 257 Mass. 446, 447-448 (1926); *Tanzilli* v.
*Casassa*, 324 Mass. 113, 117 (1949); *Rodenstein* v. *Board
of Appeal of Boston*, 337 Mass. 333, 335, 337 (1958);
*Kairis* v. *Board of Appeal of Cambridge*, 337 Mass. 528,
529-530, 531 (1958); *Johnson* v. *Board of Appeals of
Wareham*, 360 Mass. 872 (1972); *Broderick* v. *Board of
Appeal of Boston*, 361 Mass. 472, 478-479, and n. 3
(1972).

In our view, the evidence offered by the bank as to the
availability of the locus for house lots (note 5, this
opinion) distinguishes the present case from those such as
*Rodenstein* v. *Board of Appeal of Boston*, 337 Mass. 333,
335-336, 337 (1958), *Kairis* v. *Board of Appeal of
Cambridge*, 337 Mass. 528, 529, 530, 531-532 (1958),
*Dion* v. *Board of Appeals of Waltham*, 344 Mass. 547,
550-551, 552 (1962), and *Sherman* v. *Board of Appeals
of Worcester*, 354 Mass. 133, 135, 136 (1968).[9]   In each
of those cases the trial judge appears to have made a
finding, express or implied, as to the economic unlikeli-
hood of future development of the locus for a use
permitted by the zoning ordinance or by-law.   In the
present cases the trial judge declined to make any such
finding.   We perceive no constitutional problem involved
in his failure to do so.   *Abbott* v. *Appleton Nursing
Home, Inc.* 355 Mass. 217, 223 (1969).

We have reviewed the cases cited in the light of the
proposition that "[n]o person has a legal right to a vari-
ance and they are to be granted sparingly" (*Damaskos* v.
*Board of Appeal of Boston*, 359 Mass. 55, 61 [1971]) and

---

[9]See also *Marinelli* v. *Board of Appeal of Boston*, 275 Mass. 169,
172 (1931).

have concluded that the evidence in this case does not warrant a finding that the requested variance could be granted "without nullifying or substantially derogating from the intent or purpose" of the zoning by-law within the meaning of G. L. c. 40A, § 15 (3). It follows that the decrees of the Superior Court annulling the decision of the board as in excess of its authority must stand.

2. The petition for a writ of certiorari sought to challenge the composition of the membership of the board (see *Reynolds* v. *Board of Appeal of Springfield*, 335 Mass. 464, 467-468 [1957]) which rendered the decision which has already been considered at length. It is clear from the face of the petition that its only objective was to quash that particular decision. As that decision has not survived, we consider that the order for judgment of dismissal is now moot. See *Bettigole* v. *City Council of Springfield*, 1 Mass. App. Ct. 816 (1973), and cases cited. That order is to be modified so as to provide that the dismissal is not on the merits but because the case has become moot. *Chiara* v. *Zoning Bd. of Appeals of Methuen, post,* 796 (1974). Upon the entry of such a modified form of order the exception to the existing order is to be considered as waived.

The final decrees in Nos. 107573 and 107979 are affirmed. The petition in No. 676440 is remanded to the Superior Court for the further proceedings required by part 2 of this opinion. Costs of appeal (or on exceptions) are not to be taxed in favor of any party.

*So ordered.*