ROSE T. CAVANAUGH vs. JOSEPH J. DiFLUMERA & others.[1]

Hampden.   February 14, 1980. — March 19, 1980.

Present: GREANEY, ROSE, & PERRETTA, JJ.

*Zoning,* Variance.

In order to warrant annulment of a local discretionary grant of a variance, there must be a finding that the use permitted by the variance constitutes a substantial deviation from the intent and purpose of the by-law.  [400]

In an action seeking annulment of a variance granted by a town's board of appeals to permit the defendants to use their property for a general store despite its location in a residential zoning district, the judge erred in finding that the variance derogated from the intent and purpose of the by-law where it appeared that the defendants had made substantial improvements to the property, that their proposed enterprise was of substantial benefit to the district as a whole, that location of the property on a principal traffic artery adjoining a cemetery tended to minimize whatever adverse effect it might have on the otherwise residential and rural flavor of the neighborhood, and that there were other exceptional circumstances justifying a variance.  [400-402]

CIVIL ACTION commenced in the Superior Court on June 14, 1978.

The case was heard by *Moriarty, J.*

*James L. Allen* for the defendants.

GREANEY, J.   A Superior Court judge annulled a variance granted by the board of appeals of Agawam which allowed Joseph J. and Jeannette A. DiFlumera to use their property on Southwick Street in Agawam (locus) for a general store despite its location in a Residence A-2 zoning district.  The judge took a view and made careful and detailed findings of

_____

[1] Jeannette A. DiFlumera, Joseph's wife, and the board of appeals of Agawam.

fact concerning each of the three conjunctive statutory requirements imposed by G. L. c. 40A, § 15 (as in effect prior to amendment by St. 1975, c. 808, § 3),[2] as prerequisites to the grant of a variance. *Blackman* v. *Board of Appeals of Barnstable*, 334 Mass. 446, 450 (1956). *Atherton* v. *Board of Appeals of Bourne*, 334 Mass. 451, 454 (1956). The judge's findings amply support his conclusions that "owing to conditions especially affecting [this] parcel . . . but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the . . . by-law would involve substantial hardship . . . and [that] desirable relief may be granted without substantial detriment to the public good." G. L. c. 40A, § 15. Further discussion as to the existence of these requirements is unnecessary. *Rodenstein* v. *Board of Appeal of Boston*, 337 Mass. 333, 335-336 (1958). The judge predicated annulment of the variance on the sole ground that it derogated from the intent and purpose of the by-law. *Planning Bd. of Springfield* v. *Board of Appeals of Springfield*, 355 Mass. 460, 462 (1969), and cases cited. In reviewing that conclusion, we must accept the judge's findings of fact unless convinced that they are clearly erroneous (*Broderick* v. *Board of Appeal of Boston*, 361 Mass. 472, 477, 478 [1972]), but we are independently to "determine[] what decision the law requires upon the facts found." *Bicknell Realty Co.* v. *Board of Appeal of Boston*, 330 Mass. 676, 679 (1953). *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 559 (1954). On the facts found by the judge, we conclude that the variance will not nullify or substantially derogate from the intent and purpose of the zoning by-law, and, as a consequence, we hold that the board's decision must be sustained.

The locus consists of a narrow tract of land in Agawam located on that section of Southwick Street which is part of a heavily traveled highway (Route 57). The area surround-

---

[2] Unless otherwise noted, all references to G. L. c. 40A in this opinion are to the enabling act as it existed prior to amendment by St. 1975, c. 808, § 3. Chapter 808 did not become effective in Agawam until June 30, 1978, and is inapplicable to the zoning decision under review.

ing the property has a mixed residential and rural flavor with a number of small fruit and vegetable stands along the highway. The area contains a small shopping area one mile east of the locus on Southwick Street and a Polish-American club within 900 feet of the locus. A 282-unit federally subsidized housing development is under construction nearby. This project will be substantially tenanted by low income veterans and elderly citizens and has a walkway running to Southwick Street in the vicinity of the locus. The property abuts a cemetery on one side and the conforming residential lot with the plaintiff's home on the other. It has frontage of 39.70 feet on Southwick Street, in a zone which requires not less than 110 feet. The restricted frontage has the effect of precluding construction of a new building for any purpose, because the lot does not meet several dimensional requirements established by the by-law for the zoning district and is not entitled to the protection accorded non-conforming residential lots in certain circumstances by both the old and new enabling acts. See G. L. c. 40A, § 5A, as in effect prior to St. 1975, c. 808, § 3; G. L. c. 40A, § 6, as appearing in St. 1975, c. 808, § 3 (both requiring a minimum frontage of at least 50 feet). The lot contains a one-story cement block building, which was originally constructed as a commercial garage in 1923 or 1924, before the adoption of zoning in Agawam. Since that time, it has been utilized mainly for various commercial purposes under so-called "variation[s] of the zoning by-law," the most recent being a "variance" granted in 1967 to use the premises as a general store. Although tenants from time to time did occupy a rear apartment in the building, the judge specifically found that the building was now totally unfit for human habitation without substantial alterations forbidden by the zoning by-law. He also concluded that the building in its present condition is unusable for any purpose without a variance.

In 1974, when a prior owner petitioned the board for permission to use the premises for professional offices, the petition was denied by the local board on the basis that the 1967 "variance" was still in effect. The DiFlumeras purchased

the property in 1976, intending to use it for a general store, after ascertaining from the building inspector and pertinent town records that the lot purportedly enjoyed a "variance" for that purpose.  They received a certificate of occupancy pursuant to the existing status of the zoning and expended considerable funds renovating and repairing the interior and exterior of the building, which by that time had become rat infested and badly deteriorated.  In 1977, the plaintiff commenced a civil action in the Superior Court seeking to enforce the provisions of the zoning by-law and to revoke the DiFlumeras' building permit.  G. L. c. 40A, § 22.  Relief was granted in that action on the basis that the "variances" granted to the DiFlumeras' predecessors in title were in fact permits to continue non-conforming uses, which had been eliminated by abandonment.  The DiFlumeras appealed from the judgment.  While the decision was on appeal, the DiFlumeras applied for and were granted the variance which is the subject of this appeal.  Upon receipt of the variance, they withdrew their appeal from the judgment in the earlier case.  That decision had the effect of dramatically changing a settled zoning picture in existence for virtually thirty years, which was relied upon by the town and the defendants, and which had established the right for the site to be used commercially.  There is also no doubt that the DiFlumeras withdrew their appeal from the judgment in that case because of the grant of the variance now under study.

In concluding that the variance would not cause any substantial detriment to the public good, the judge specifically found the following:  that the improvements which the DiFlumeras had already accomplished "are much to be preferred over the derelict and rat-infested conditions existing when they acquired ownership"; that their "modest business enterprise . . . is . . . of substantial benefit to the district as a whole"; that "[i]t provides a convenient and easily accessible location for incidental shopping which tends (except perhaps to the immediate abutter [the plaintiff]) toward a more comfortable residential environment";

that when the housing project is completed it will serve as "a convenient location for immediate shopping needs within walking distance for those elderly or handicapped residents of the project who will lack the mechanical means of traveling to more remote areas"; and that its location on a principal traffic artery adjoining a cemetery "tends to minimize whatever adverse effect it might have on the otherwise residential and rural flavor of the district." All of these findings apply with equal force to the substantial derogation question. As to the value of the property without a variance, the judge observed that "[t]he DiFlumeras . . . find themselves in the untenable position of owning a building which cannot lawfully be used for any purpose . . . . [T]he only value of the property is for sale to an abutter — and even that value would be diminished because of the cost of demolishing the useless structure."

We think that the judge, in considering whether the use permitted by this variance derogates from the intent and purpose of the zoning by-law, overlooked the fact that the deviation must be *substantial,* and that, unless the use significantly detracts from the zoning plan for the district, the local discretionary grant of the variance (all the other statutory elements having been satisfied) must be upheld. The requirement of substantial derogation recognizes that the "effect of a variance is to give a landowner a license or permit to use his property in a manner otherwise violative of the zoning ordinance," (3 Rathkopf, Zoning and Planning § 38.06, at 38-63 [4th ed. 1979]), and that a use variance in particular "permits a use which the ordinance prohibits." *Id.*, § 38.01, at 38-1. Because of this, some derogation from the by-law's purpose is anticipated by every variance. Otherwise, the denial of relief on the basis of a slight or insubstantial departure from the goals of the by-law would prohibit the grant of any variance, and would, in cases such as this one, approach confiscation by depriving a property owner of virtually all practical use of his property. *Id.* at 38-4 n.12, and cases cited.

There is no question that the DiFlumeras' use of the site for a small general store will be aesthetically more attractive than what previously existed at the locus (see *DiRico* v.

*Board of Appeals of Quincy,* 341 Mass. 607, 609-610 [1961]), and that their modest business will be of substantial benefit to the district as a whole. *Broderick* v. *Board of Appeal of Boston,* 361 Mass. at 479. There has been a lengthy period of similar non-conforming uses on the site, which were such that "the present changes will not substantially alter either the nature or the scope of the use."[3] *Ibid.* See also *Tanzilli* v. *Casassa,* 324 Mass. 113, 117 (1949); *Rodenstein* v. *Board of Appeal of Boston,* 337 Mass. at 337. It is also important that the neighborhood is not, in fact, entirely residential, but contains some heterogeneity of use (*Tanzilli* v. *Casassa, supra*; contrast *Hunt* v. *Milton Sav. Bank,* 2 Mass. App. Ct. 133, 139-140 [1974]), and that the by-law itself permits some business use (see *Kairis* v. *Board of Appeal of Cambridge,* 337 Mass. 528, 531 [1958]).[4]

We cannot ignore the important fact that there are exceptional circumstances present, arising from the defendants' long-standing good faith reliance on a series of local zoning decisions which allowed commercial uses on the property and which were retroactively declared invalid — a circumstance which has been found in the past to justify relaxation of zoning restrictions. See *Rodenstein* v. *Board of Appeal of Boston, supra* at 336, and cases cited. The relative isolation of the locus also minimizes its possible adverse impact on the district (*Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 551-552 [1962]), and the existence of the store will tend to create a more comfortable residential environment throughout the district. It is reasonably clear from the findings that the only property which might incur any adverse

---

[3] In its decision, the board described the following permitted uses conducted at the site: 1949-1952, a retail store; 1952-1962, a retail store and barber shop; 1962-1967, a brush factory; 1967 through 1978, a general store (with use as a church when the general store was not operated).

[4] The Residence A-2 zoning district permits, in addition to residential use, professional offices of various types when the professional resides on the premises, beauty parlors when the operator resides on the premises, cemeteries, government buildings, schools, colleges, churches and telephone exchange buildings. See § 20-21(a)(c)(e)(f)(g) & (i) of the zoning by-law.

effect from the presence of a small convenience store at this site is the plaintiff's, and that her degree of injury is considerably mitigated by the fact that commercial uses (and at one time a light industrial use) have existed at the location for over thirty years. The use variance was also buffered by the board's imposition of a series of restrictions which are designed to lessen its impact on the rest of the neighborhood and to prevent its future expansion. *Rosenstein* v. *Board of Appeal of Boston, supra* at 337.[5]

Finally, the facts found by the judge make the present case parallel to decisions such as *Rodenstein* v. *Board of Appeal of Boston, supra* at 335-336; *Kairis* v. *Board of Appeal of Cambridge, supra* at 529-532; *Dion* v. *Board of Appeals of Waltham, supra* at 550-552; and *Sherman* v. *Board of Appeals of Worcester,* 354 Mass. 133, 135-136 (1968) — all cases where the trial judge appears to have found that it was not economically feasible or likely that the locus would be developed in the future for a use permitted by the zoning ordinance or by-law. Contrast *DiRico* v. *Board of Appeals of Quincy, supra* at 610; *Hunt* v. *Milton Sav. Bank, supra* at 140. There were no specific negative factors found by the judge which effectively counterbalance his positive findings as to the use, or which persuade us that the relief granted will substantially detract from the intent or purpose of the zoning created for the district. It follows that the board's conclusion that the use could compatibly exist with the purposes and intent of the by-law was correct and that it was justified in granting the variance. *Tanzilli* v. *Casassa,* 324 Mass. at 117, and cases cited. *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. at 559.

The judgment annulling the variance is reversed. A new judgment is to be entered stating that the decision of the board did not exceed its authority.

*So ordered.*

---

[5] These restrictions comprehensively deal with and limit the store's hours of operation and the scope of its trade, grant permission for one specified sign, prohibit any flashing signs, restrict all sales of merchandise to the inside of the store, bar any alterations which would increase the size of the building, and otherwise, in various ways, impose conditions on the limited business use authorized.