UNITED STATES of America, Plaintiff,

v.

176.10 ACRES OF LAND, MORE OR LESS, SITUATED IN the TOWNS OF TRURO AND WELLFLEET, County of Barnstable, Commonwealth of Massachusetts, Unknown Others, et al., Defendants.

Civ. A. No. 73–1278–Mc(C).

United States District Court,
D. Massachusetts.

March 31, 1983.

Asst. U.S. Atty. Ralph Child, and Asst. U.S. Atty. Joseph McGovern, Boston, Mass., for plaintiff.

Alexander Whiteside, Putnam, Bell & Russell, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

On March 14, 1978, the District Court, Freedman, J., found that petitioner Margaret T. McBridge, is the owner in fee simple of Tract No. 19–W–4167 ("subject tract") pursuant to her petition for determination of title. See the Order on page 2 of Magistrate Princi's memorandum, findings, and recommendations, March 1, 1978.

An issue to be resolved, however, before a determination of the value of the parcel can be established by the Commission, is whether the subject tract has access sufficient to permit legal utilization of the land for residential construction.

The subject tract consists of approximately 4.9 acres of woodland in Wellfleet. It is bounded on the north by Herring Brook, on the east by Herring Pond, and on the south and west by woodland. The sub-ject tract was originally part of a larger property comprised of the subject tract and what is now Tract No. 19–W–4169. Tract 14–W–4169 lies to the north of the subject tract on the other side of Herring Brook, and has frontage on Herring Pond Road, an unpaved public way. In 1852 the original property was severed and the subject tract was left without frontage on a public way. It has never regained such frontage.

## I. Scope of Easement

Both parties agree that an easement by necessity arose in 1852 when the original property was severed leaving the subject tract landlocked. The doctrine of easement by necessity at common law has been discussed recently by the United States Supreme Court in *Leo Sheep Company v. United States*, 440 U.S. 668, 679, 99 S.Ct. 1403, 1409, 59 L.Ed.2d 677 (1979) where Justice Rehnquist wrote for a unanimous court:

> Where a private landowner conveys to another individual a portion of his lands in a certain area and retains the rest, it is presumed at common law that the grantor has reserved an easement to pass over the granted property if such passage is necessary to reach the retained property. These rights-of-way are referred to as "easements by necessity."

According to the rationale of *Leo,* the parties to the 1852 conveyance in the case at bar were presumed not to have intended to cut off the subject tract from access to Herring Pond Road. The present parties also agree that the original easement still exists today. The parties disagree, however, as to the scope of the implied easement.

Plaintiff argues that the easement of necessity does not permit use of the subject tract for residential construction because such use constitutes an overburdening of the dominant estate (the subject tract). Defendant landowner contends, on the contrary, that the easement may be used for such purposes as are reasonably necessary to the full enjoyment of the premises, which purposes include the building of a house.

As to the scope of the implied easement and to what uses the landowner of the dominant estate can subject the easement, the Restatement, Property, Section 484, Comment (b) reads:

> *Where created by implication.* The extent of an easement created by implication is to be inferred from the circumstances which exist at the time of the conveyance and give rise to the implication. Among these circumstances is the use which is being made of the dominant tenement at that time. Yet it does not follow that the use authorized is to be limited to such a use as was required by the dominant tenement at that time. It is to be measured rather by such uses as the parties might reasonably have expected from future uses of the dominant tenement. What the parties might reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement. It is not to be assumed, however, that they anticipated an abnormal development. Hence, the scope of an easement created by implication does not extend to uses required by such development.

Massachusetts cases on point include *Davis v. Sikes,* 254 Mass. 540, 151 N.E. 291 (1926) where it was held that an easement of necessity existed regarding a farmer's use of an existing roadway. The Court in *Davis* stated that "[a] general right of way obtained by grant may be used for such purposes as are reasonably necessary to the full enjoyment of the premises. It is not necessarily limited to such use as was being made of it at the time of the conveyance." *Id.* at 547, 151 N.E. 291.

In the case of *Rajewski v. MacBean,* 273 Mass. 1, 172 N.E. 882, (1930), where the Court had an express right of way before it, the Court stated that:

> [t]he question as to the extent and limits of a reasonable right of way . . . [is] . . . largely one of fact . . . . Such a way is not necessarily confined to the purposes for which the dominant estate was used at the time of the grant but is a right of way for every reasonable use to which the dominant estate may be devoted.

*Id.* at 6, 172 N.E. 882.

Finally, in *Hart v. Deering,* 222 Mass. 407, 411, 111 N.E. 37 (1916), an easement of necessity had arisen regarding a residential lot in a residential neighborhood. The Court held that the dominant estate was suitable for a houselot, and accordingly, a way wide enough for the passage of ordinary teams and other conveyances was implied.

■ These cases all support the proposition that an easement of necessity may be used for such purposes as are reasonably necessary to the full enjoyment of the premises and do not overburden the land. The Court rules that use of land for a single residential dwelling is a reasonable use that was foreseeable in 1852, and that use of the easement appropriate to permit residential use of the dominant estate is, therefore, appropriate today. The fact that some of the above-cited cases deal with express rather than implied easements does not affect the Court's decision. The same rationale applies whether the Court is determining the scope of an easement granted by deed, or an easement implied by necessity.

■ Accordingly, I rule that the easement of the subject tract over tract No. 19–W–4169 allows the construction of a driveway.

■ Plaintiff argues that the easement in any event does not give rise to a right to install utilities. Plaintiff cites Massachusetts cases construing the scope of *express* easements to exclude installation of utilities absent such provisions in the deed. *Ward v. McGlory,* 358 Mass. 322, 265 N.E.2d 78 (1970) (easement to use private way to reach agricultural land does not permit installation of utility poles on or adjacent to land); *Nantucket Conservation Foundation, Inc. v. Russel Management, Inc.,* 2 Mass. App. 868, 316 N.E.2d 625 (1974) (rescript) (express easement of travel does not include right to install utilities for subdivision).

Where a deed expresses *some* restrictions, a court must be strict in confining the parties to the stated restriction. The present controversy, however, involves an *implied* easement. Where the parties have expressed no restriction to the granting of an easement or where the easement is implied by necessity as it is here, the Court must interpret the intent of the parties in defining the scope of the easement. In interpreting the intent of the parties who severed the property at issue in 1852 the Court rules that it is reasonable to assume that the parties foresaw residential use of the landlocked parcel as a probable use and that use would today include utilities as well as a driveway.

The Court accordingly restates its holding that the subject tract has a right of way by necessity over Tract No. 19–W–4169, and further rules that the scope of this right of way permits residential use of the parcel.

II. Zoning Restrictions

For the subject tract to be buildable for residential construction it must comply with applicable zoning rules. The land cannot comply in this case, however, because it lacks the required frontage on a public way.

Local zoning controls in Massachusetts are authorized under the Zoning Act, Mass. Gen.Laws, ch. 40A. Pursuant to that authority, the Town of Wellfleet has adopted a Zoning By-law that lists the subject tract as residential.

The Wellfleet Zoning By-laws provide in Section 5.4.1 that building lots in areas zoned Residential 1 must have a minimum frontage as a public way of 125 feet. "Lot Frontage" is defined in Section 2.1 as "that portion of a lot fronting on and having access to a street." Under these definitions the subject tract is not entitled to a building permit under the Wellfleet Zoning By-law. Nor may a building permit be obtained for the subject tract either through grandfather provisions or through a variance from the Town of Wellfleet Board of Appeals.

As for grandfathering, Mass.Gen.Laws, ch. 40A § 6, paragraph 4 provides that no increase in lot frontage required by a zoning by-law is applicable to lots in existence prior to promulgation of the increased requirement. The provision applies, however, only to lots which, at the time of the imposition of an increased lot frontage requirement, already had 50 feet of lot frontage. The subject tract had no lot frontage at all.

The Wellfleet Zoning By-laws in Section 8.4.3 also provide for variances in certain circumstances. That by-law, however, is controlled by the Zoning Enabling Act, which at Mass.Gen.Laws ch. 40A, § 10, set out specific requirements for the granting of variances. The statute states in relevant part:

> The permit granting authority shall have the power after public hearing ... to grant upon appeal or upon petition with respect to particular land or structures a variance from the terms of the applicable zoning ordinance or by-law where such permit granting authority specifically finds that owning to circumstances relating to the soil conditions, shape, or topography of such land or structures and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.

Those requirements have been strictly construed, particularly in the context of lot frontage. *See Warren v. Board of Appeals of Amherst*, 383 Mass. 1, 416 N.E.2d 1382 (1981) (zoning board of appeals may not grant variance from 100-foot frontage requirement, even though lot has 98 feet, since mere hardship is not a circumstance especially affecting the parcel); *Arrigo v. Planning Board of Franklin*, —— Mass.App. ——, 1981 Mass.App.Adv.Sh. 2101, 429 N.E.2d 355 (zoning board of appeals lacks power to grant 14-foot variance from 200-foot frontage requirement); *Contra, Cava-*

naugh v. DiFlumera, 9 Mass.App. 396, 401 N.E.2d 867 (1980) (where property had frontage of 39.7 feet in a zone that required not less than 110 feet, appeals court held variance justifiable under circumstances and properly granted under Mass.Gen.Laws ch. 40A [prior to 1975 amendment]).

In each of the above-cited cases, the lots had some frontage. The subject tract, as stated above, has no frontage at all and I rule that it would not, therefore, be eligible for a variance.

█ Accordingly, I rule that there can be no power in a zoning board of appeals to grant a variance for a lot with absolutely no frontage at all and that since the subject tract may not be converted into a building lot it may not, therefore, be valued as such by the Commission.

Order accordingly.