DONOVAN DRUG CORPORATION *vs.* BOARD OF APPEALS
OF HINGHAM.

Plymouth. April 3, 1957. — May 3, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Zoning. Hingham.*

Facts found in a suit in equity respecting a "grocery store resembling a
country general store" operated as a preëxisting nonconforming use
in a residential zoning district of Hingham and a proposed use of such
property as a "retail, neighborhood type of modern drug store" war-
ranted a conclusion that the "proposed drug store use would be more
detrimental to the character of the district than the grocery store or
general store use" and would not be permissible under a provision of the
Hingham zoning by-law authorizing the continuance of any preëxist-
ing nonconforming use of property or any different use thereof "not
more detrimental to the character of the district . . . than such ex-
isting use."

BILL IN EQUITY, filed in the Superior Court on April 24,
1956.

The suit was heard by *Hudson, J.*

*Joseph M. Leahy,* (*Daniel L. O'Donnell* with him,) for the
plaintiff.

*George W. McLaughlin,* for the defendant.

SPALDING, J. This is a bill in equity under G. L. (Ter.
Ed.) c. 40A, § 21, inserted by St. 1954, c. 368, § 2, by way

of appeal from a decision of the board of appeals of the town of Hingham.

The judge made findings of material facts which include the following: For many years prior to February 28, 1955, a "grocery store resembling a country general store" had been operated by one Cushing at 738 Main Street in the town of Hingham. The store is in a residential "A" district where stores are not permitted and its use as a grocery store was permitted because such use was nonconforming at the time the zoning law was adopted in 1941. In March, 1955, the premises were sold by Cushing to one McGuire. In February, 1956, McGuire made an agreement with the plaintiff to sell the premises and in pursuance thereof they were conveyed to the plaintiff in April of that year. At the time the agreement was made the plaintiff applied to the building commissioner of the town for a permit to remodel the store for use as a drug store. The commissioner denied the application and from his decision the plaintiff appealed to the board of appeals. After hearing, the board rendered a decision denying the application.

Section VII of the town's zoning by-law, so far as here material, provides that "any building or structure or use of a building, structure or land . . . which existed at the time this zoning by-law was adopted (or any different use of such building, structure or land . . . *not more detrimental to the character of the district in which located than such existing use*) . . . may be continued" as a nonconforming building, structure or use (emphasis supplied). In its decision denying the application, the board found that the proposed use of the premises for a drug store would be "more detrimental to the character of the district than the existing grocery store use."

The premises are located on Route 128, a State highway leading to Nantasket, Cohasset, Scituate and Marshfield and providing convenient access to Brockton, Rockland and part of the area west of Boston. The highway is a much used one and in summer, especially on week ends, the traffic is very heavy. The neighborhood in which the store is

situated is "unusually attractive, consisting in the main of old and well-maintained attractive colonial type dwellings set back from the travelled way on both sides of the street . . . approximately fifty feet." The section is "strictly . . . residential" and the street, "shaded by beautiful elms," "resembles a typical old New England Main Street." The store is about forty feet by sixty-five feet containing an open area on the first floor used for store purposes and a back room connecting with the store. There is an apartment on the second floor in which the proprietor of the store lived.

"From 1906 to . . . 1955, the general store was known as Cushing's Market. During its existence, . . . a period of forty-eight years, it was owned and operated by father and son. A sign attached to the building outside identified it . . . and [the sign] was illuminated at night by two flood lights and fifteen single bulbs. Because of the shortage of meats and other products [due to the war] the store was closed . . . from February, 1942, to October, 1946."

During the operation of the store the following was sold: groceries, meats, ice cream, tonic, newspapers, patent medicines, toilet articles, candy, tobacco, and camera films. On the open porch in front was a vegetable rack. In the rear is a loading platform. Gasoline was sold from a pump in front of the store until 1935, at which time it was removed to the rear for private use. A light truck was used in the business, principally for the delivery of grocery orders which in latter years constituted about one half the store's business.

During the period between 1936 and 1941 the store was generally open from 7 A.M. to between 6 and 8 P.M. From 1923 to 1931 and from 1947 to 1949 the store had a Sunday license which permitted the sale of ice cream mix, soda water, confectionery and fruit. When operated on Sunday, the store was closed at noon but occasionally it was open all day. Commencing in 1950 the store was closed on Sundays and after 1951 it was closed also on Mondays, during the summer months.

The plaintiff intends to operate the premises as a "retail,

neighborhood type of modern drug store," the business of which would include the filling of prescriptions and the sale of druggists' sundries, prescription accessories, cosmetics, candy, cameras, toys, sun glasses, fountain pens and soda fountain products. The drug store would be open from 9 A.M. to 9 P.M. (or possibly 10 P.M.) seven days a week. The architecture of the proposed exterior of the store would be of colonial design.

After taking a view and finding the foregoing facts, the judge concluded that the "proposed drug store use would be more detrimental to the character of the district than the grocery store or general store use." From a decree that the decision of the board was not in excess of its authority and that no modification of it was required, the plaintiff appealed. The evidence is reported.

The nature and scope of the review under c. 40A, § 21, have been set forth in recent decisions of this court construing similarly worded provisions of an earlier statute (G. L. [Ter. Ed.] c. 40, § 30, as appearing in St. 1933, c. 269, § 1) and need not be restated. *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676. *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555. With the principles of these cases in mind, we think that the decree of the court below cannot be said to be erroneous. We recognize that the present case does not involve, as do the cases just cited, the granting or denial of a variance. The issue in the present case is narrower than those presented in the variance cases. Here the sole issue is whether the proposed use of the premises in question as a drug store is "more detrimental to the character of the district" than the existing use of the property as a grocery or general store. We are of opinion that the subsidiary facts found by the judge support his ultimate conclusion that the proposed use would be more detrimental. True, with the exception of the view, all the evidence that was before the judge, including photographs and plans of the premises, is before us, and there was little or no conflict in the oral testimony. But the judge could have concluded that a drug store of the

sort proposed here that was in operation seven days a week between the hours of 9 A.M. and 9 P.M., and possibly later, was a different use and one that was less compatible with the character of a residential district than that of the existing grocery store which for the past several years had been operated on a six day basis and, during the summer, on a five day basis. We cannot say that this conclusion is plainly wrong. This is not a case where there is a continuation of the same use but with an increased volume of business. Hence cases such as *Cochran* v. *Roemer*, 287 Mass. 500, and *Building Commissioner of Medford* v. *McGrath*, 312 Mass. 461, on which the plaintiff relies, are not controlling.

*Decree affirmed.*