Connolly, J.
The plaintiff, Lewis C. Cohen, filed this action appealing a decision of the Town of Needham Board of Appeals which held that the tenants occupying the premises at 31 Thorpe Road in Needham, Massachusetts were in violation of §1.4.8 of the Need-ham Zoning By-Laws. Cohen contends that the Board’s decision was erroneous as a matter of law and seeks to have this court annul the decision of the Board and enter judgment for the plaintiffs. A trial was held without a jury and the parties submitted an Agreed Statement of Facts.
FINDINGS OF FACT
The following facts are undisputed. The property that is the subject of this litigation is located at 31 Thorpe Road in Needham. It is occupied by an existing mill-style building which was in place and being used for the manufacture of textile products by a single occupant when the Needham Zoning By-law was enacted in 1925. Although the property is now situated in a residentially zoned district under the currently applicable provisions of the Needham Zoning By-Law, the use of the building for the manufacture of textile products had continued without interruption as a nonconforming use up to the date when the property was acquired by Lewis C. Cohen (Cohen), Trustee of the Thoipe Road Trust (Trust) on November 17, 1983. The present Needham Zoning By-Laws require that any changes to a structure or use of buildings, designated as a pre-existing nonconforming property or use, must comply with all applicable zoning, special permit, and parking regulations in effect as of the date of the change in the structure or its use.
On or about November 30, 1982, the then Inspector of Buildings and Zoning Officer, John C. Rosenfeld (Rosenfeld) observed that the premises were being *463 used for office space, manufacturing, storage materials, supplies and finished goods, delivery and shipping of goods, retail and wholesale outlet activity in the office spaces, and paved area for parking and trucking. Furthermore, on or about December 2, 1982, he concluded that the premises, as solely occupied and used by the William Gorse Company, was “a legal non-conforming use of the business which [was] being conducted primarily for the manufacturing of knitted goods.” When the William Gorse Company closed its doors, it employed 50 employees and parked 22 cars.
In September of 1983, Cohen was interested in purchasing the property, so he met with Rosenfeld on September 29, 1983. On September 30, 1983, Cohen as President of Apahouser Lock and Security Corporation (Apahouser), sent a letter to Rosenfeld requesting a certificate of occupancy and stated that:
We anticipate using the building for our [Apahouser’s] corporate headquarters. The functions performed in the building will entail: shipping/receiving; light manufacturing and assembly; warehousing; wholesale sales and distribution; sales showroom and offices; customer training facilities; lock and alarm testing; computer installation.
Rosenfeld replied to Cohen’s request by letter dated October 4, 1983, stating that:
After meeting with you and Mr. Cox and reviewing your letter of September 30, 1983, I am of the opinion and so rule[,] after having talked[,] that your proposed use of the premises at 31 Thorpe Road, Needham Heights, would be an allowable use as provided in the non-conforming sections of the Needham Zoning By-Law.
Rosenfeld’s approval of Cohen’s proposed use of the property was based on §1.4.2 of the Needham By-Laws which provides that:
Continuation — Any building or structure, or use of building, structure or land which lawfully existed at the time of the adoption of this By-Law, or any amendment thereof, may be continued to the same extent except as otherwise provided herein.
The property was acquired by Cohen in November of 1983 and for the first six months after the acquisition, the building was occupied by only one tenant, Apahouser. Apahouser used the building on the property for shipping and receiving, light manufacturing and assembly, warehousing, wholesale sales and distribution, sales, showroom and offices, customer training facilities, lock and alarm testing, and computer installation. As stated above, Apahouser’s use of the premises was approved by Rosenfeld in October of 1983. Apahouser employs approximately 37 employees and its hours of operation are from approximately 8:00 a.m. to 5:00 p.m.
On August 10, 1984, a company named ChipCom Corporation (ChipCom) began to occupy space on the property. The activities performed by ChipCom included design and development for electronic equipment for computer communication, office functions, delivery and shipment of goods, and the sale of goods. ChipCom employed approximately 29 employees and had hours of operation from approximately 7:30 a.m. to 11:00 p.m. Parking for 50 accompanied the combined use of the property by the two tenants, Apahouser and ChipCom. ChipCom never applied for nor did they ever receive any special permit under §1.4.8 of the Needham By-Laws from the Town of Needham for a replacement of a nonconforming use.
On August 29, 1984, Cohen filed Applications for Hearing with the Town of Needham requesting a special permit and a use variance for off-street parking for the property. At the scheduled hearing, the Need-ham Zoning Board of Appeals (Board) denied Cohen’s application for a variance because it did not find grounds for granting it under the applicable section of the Zoning By-Law. The Board voted, however, subject to certain conditions, to grant a special permit to use portions of the property not previously used for the regular parking of motor vehicles, to park up to a maximum of 39 motor vehicles. Condition Six of the decision specifically stated that:
Except as herein expressly provided, nothing herein contained shall authorize, or be construed to authorize, the applicant to increase the extent of the non-conforming use of the locus and the building thereon.
On July 28, 1988, the new Building Inspector Armand H. Lavigne (Lavigne) wrote to Cohen in connection with the proposed use of a portion of the property for the operation of a potters studio stating in part as follows:
If you wish to increase the number of tenants you must first secure approval from the Zoning Board of Appeals under Section 1.4.8 . . [1]
Cohen did not appeal the contents of this letter that relayed the decision of the building inspector. It was subsequently determined that the Potters School was an exempt use and the Potters Shop obtained a special permit.
Prior to Lavigne’s letter on July 28, 1988, space in the building located on the property had been leased to a number of tenants and subtenants other than Apahouser and ChipCom including, but not limited to, Mel Green Design (June 15, 1985), Hub Communications (August 15,1985), Impac International (June 20, 1988), and The Potter Shop and The Potters School (June 30, 1988). Except for the Potters Shop (The Potters School is an exempt use), none of these tenants ever applied for nor did they ever receive a special permit under §1.4.8 of the Needham By-Laws. After July 28, 1988, space at the property was leased to Consult America (December 15, 1988), the Synergy Corporation (January 20, 1989), and sometime there *464 after Raphael Associates became a subtenant of the Synergy Corporation. Some of the functions performed by these tenants in their businesses included computer design, computer consulting, political and sociological consulting, foreign film distribution, and vocational counseling and rehabilitation. These functions do not involve light manufacturing. None of these tenants, except for the Potters Shop, ever applied for nor did they ever receive a special permit in accordance with §1.4.8 of the Needham By-Laws.
In August of 1989, Inspector Lavigne wrote to his predecessor, Inspector Rosenfeld, asking him whether he had granted approval for the building to accommodate approximately five tenants. Rosenfeld responded that he recalled having “issued 4 or 5 permits for separate parts of the building for various tenants provided that they fell within the pattern of the original nonconforming use.”
Thereafter, on August 15, 1989, Lavigne wrote to another complaining neighbor, Sandra Mangine, and stated that “[a]fter reviewing the records on file, in my opinion, this property was approved for 5 tenants, which is the number that presiently (sic) exist at this location.”
On March 1, 1990, defendant Bruce Herman (Herman), an abutting owner of the property, filed a Request for Zoning Enforcement with Inspector Lavigne regarding the property. Herman claimed that the Trust’s use of the property was violative of the Need-ham Zoning By-Law because:
It is my understanding that the current use is neither residential [the permitted use] nor single-occupant, owner-occupied, textile mill [the grandfathered use]. Instead, it is a multi-tenant use, consisting of at least seven business enterprises, none of which are a textile mill. Under Section 1.4.8, a special permit is required for any replacement of a non-conforming use by another non-conforming use.
On or about March 27, 1990, in response to Herman’s request, Inspector Lavigne found the property to be in compliance with the Needham By-Law. When later asked to explain this ruling, Lavigne stated that he did not feel he could overrule decisions of previous building inspectors and that he had informed Cohen that if a tenant vacated the premises he had to obtain a special permit under §1.4.8.
Herman appealed this decision to the Board on April 25,1990, and a hearing was set for June 5,1990. At the hearing’s conclusion, the Zoning Board of Appeals overruled Lavigne’s decision ruling that it was in error. The Board’s decision was based on its finding that there were uses that existed at the property for which no special permit under §1.4.8 of the Zoning By-Law had been granted.
Cohen has not complied with but rather has appealed the June 5, 1990 decision of the Zoning Board of Appeals to this Court which is the subject matter of this case.
Presently the property is occupied by a number of tenants and sub-tenants of the Thorpe Road Trust without the Cohen or the other tenants obtaining special permits or variances except for Apahouser Lock, The Potters School, and The Potters Shop. The tenants occupying the property include Apahouser, the Cohn Group, which is engaged in public relations, The Potters Shop and The Potters School, and Neil Evans, who is engaged in telecommunications and foreign film distribution and is doing business as Sharp Features, Incorporated, East Track, and Web Credit. In addition to Apahouser’s light manufacturing use, Apahouser and the other three existing tenants use the property for offices.
RULINGS OF LAW
The issue before this court is whether the present use of the property constitutes a change or substantial extension of the prior use therefore requiring a special permit from the Needham Board of Appeals. The Board held that it was.
Massachusetts General Laws, Chapter 40A, §6 provides, in relevant part, that “[p]re-existing nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming use to the neighborhood.” If a business seeks to extend or alter the nonconforming use, then it must first seek approval from the appropriate permit granting authoriiy of the town. Section 1.4.8 of the Need-ham Zoning By-Laws provides that “[t]he Board of Appeals may grant a special permit for the replacement of a non-conforming use of a building, structure or land by another specified use not conforming to this By-law, provided the replacement is less objectionable and detrimental to the neighborhood or any property in the neighborhood.”
In Powers v. Building Inspector of Barnstable, 363 Mass. 648 (1973), the Supreme Judicial Court established a three-part test to determine whether an alteration of a nonconforming use constituted a “change or substantial extension” of such use that would subject the resulting use to the application of the current zoning laws. Powers established that if (1) the resulting use does not reflect the nature and purpose of the nonconforming use prevailing when the zoning laws took effect, or (2) there is a difference in the quality or character, as well as the degree, of the resulting use or, (3) the resulting use is different in kind in its effect on the neighborhood, then the zoning laws are applicable to the resulting use. Id. at 653. An alteration to a use that satisfies even one of the three Powers tests will lose the protections afforded a nonconforming use *465 by G.L.c. 40A, §6. Green v. Board of Appeals of Provincetown, 26 Mass.App.Ct. 469, 472, rev’d on other grounds, 404 Mass. 571 (1989). A resulting use that is indistinguishable from the prior nonconforming use will reflect the nature and purpose of the use prevailing when the zoning laws took effect. Exact identity between the resulting use and the prior nonconforming use, however, is not required to avoid having the resulting use labelled a “change or extension” of the prior use, and thus subjected to the current zoning laws.
The first two Powers tests have inspired specific rules and exceptions. First, a nonconforming use may be enlarged, as long as the increased use is attributable to the growth of the original nonconforming use. See e.g., Cape Resorts Hotels, Inc. v. Alcoholic Licensing Board of Falmouth, 385 Mass. 205, 214 (1982); Powers v. Building Inspector of Barnstable, 363 Mass. 648 (1973). Second, a nonconforming use may be improved and made more efficient as long as the changes are “ordinarily and reasonably adapted to the original use and do not constitute a change in the original nature and purpose of the undertaking.” Berliner v. Feldman, 363 Mass. 767, 775 (1973); see also Derby Refining Co. v. City of Chelsea, 407 Mass. 703, 712-13 (1990).
Cohen argues that the activities conducted by the present tenants are within the nature and scope of the nonconforming use. He maintains that all three tests enumerated in Powers have been met. First, Cohen contends that the current use of the property is consistent with the textile manufacturing that was in place previously. He admits that some of the tenants do not engage in light manufacturing, but asserts that they all use the premises for administrative offices. Secondly, Cohen asserts that any change in the character of the property is the result of technological advancements. Previously, large machines took up large areas of space but technological advancements now enable the tenants to devote less space for machines and more space for computers and office space. Although technological advancements may justify reapportioning the space on the property for machines and offices, it does not justify an increase in the number of tenants occupying the property, when those tenants carry on business outside the scope of the prior nonconforming use.
In the present case, the building inspector allowed the use of the property to change from light manufacturing of woman’s garments to light manufacturing of security locks in the latter part of 1983. For approximately six months the property was occupied solely by Apahouser. From that point forward, several new businesses opened on the property and conducted activities which were not consistent with light manufacturing. As a result both the nature and purpose of the nonconforming use as well as its character were significantly changed. Accordingly, these tenants were required to obtain a special permit from the Board under §1.4.8 of the Needham Zoning By-Laws.
The third Powers test focuses on whether the modification is “different in kind in its effect on the neighborhood.” The court has identified several factors for assessing the impact of the modification on its neighborhood. The proposed change must add a new problem or so aggravate an existing problem as to cause new levels of concern. See Derby Refining Co., 407 Mass. at 714-17 (liquid asphalt facility did not have a more detrimental impact than a petroleum fuels facility). Traffic impacts are also a key consideration. See e.g. Cape Resorts Hotels, 385 Mass. at 216; Powers, 363 Mass. at 663. Moreover, an increase in the hours of operation may work a change different in kind on the neighborhood. See e.g., Donovan Drug Corp. v. Board of Appeals of Hingham, 336 Mass. 1, 4-5 (1957).
In August of 1984, ChipCom began to occupy space on the property. ChipCom performed the design and development for electronic equipment for computer communication. It’s hours of operation were from 7:30 a.m. to 11:00 p.m., whereas Apahouser’s hours run from approximately 8:00 a.m. to 5:00 p.m. Subsequently, Cohen was granted a special permit to park up to 39 vehicles on the property due to an increase in employees.[2]
Cohen asserts that the neighborhood has not been impacted upon negatively because there is no pollution and no increase in traffic from the increase in employees. The increase in tenants and employees, however, will inevitably have an impact on the neighborhood. Except for the property that is the subject of this litigation, all other property in that area is residential. Additional employees results in additional cars in the area and ultimately additional traffic. Since the area is primarily residential, this is increase raises safety concerns for the neighboring residents. Therefore, the resulting use by the additional tenants will have an adverse impact upon the neighborhood, therefore triggering the requirements of the applicable zoning laws.
Relying on §1.4.8 of the Needham Zoning By-Laws, the Board decided on June 5, 1990 that the change in the activities performed on the property without approval by the Board was in violation of §1.4.8. The original nonconforming use was extended from the light manufacturing of woman’s garments to the light manufacturing of security locks which was conducted by Apahouser. Between 1985 and 1988 a number of tenants occupied the property without seeking a special permit.[3] Although Apahouser performs light manufacturing, the other tenants perform a variety of functions including consulting, public relations, and foreign film distribution. These uses are outside the scope of the preexisting nonconforming use, and therefore violate §1.4.8 of the Needham Zoning Bylaws.
*466 ORDER
For the foregoing reasons, the decision of the Need-ham Board of Appeals is affirmed.

Section 1.4.8 of the Needham Zoning By-Laws provides that:
Substitution — The Board of Appeals may grant a special permit for the replacement of a non-conforming use of a building, structure or land by another specified use not conforming to this By-Law, provided the replacement is less objectionable and detrimental to the neighborhood or any property in the neighborhood.

Cohen also applied for a use variance for off-street parking which was denied because the Board did not find grounds to grant it. A condition of the special permit provided that Cohen was not authorized to increase the extent of the nonconforming use. Moreover, Lavigne wrote to Cohen in July of 1988 stating that any increase in tenants would required approval by the Board.

One tenant, The Potter's Shop, applied and received a special permit.